UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-653-MOC

| | |
|---|---|
| **AMELIA LOUISE CROFT,** | ) |
| Plaintiff, | ) |
| Vs. | ) ORDER |
| **KILOLO KIJAKAZI,** **Acting Commissioner of Social Security**, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 9) and on Defendant Commissioner's Motion for Summary Judgment (Doc. No. 11). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative review decision on her application for disability insurance benefits. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED**, Defendant's Motion for Summary Judgment is **DENIED**, and this matter is **REVERSED** and **REMANDED** for further proceedings consistent with this Order.

**I.     ADMINISTRATIVE HISTORY**

On June 18, 2020, Amelia Louise Croft ("Plaintiff") protectively filed applications for Title II Disability Insurance benefits and Title XVI Supplemental Security Income benefits, alleging disability beginning August 1, 2019. (Administrative Transcript ("Tr.") at 216–30). She was fifty years old as of her alleged onset date and has since remained an individual classified as closely approaching advanced age. (Tr. 20). Plaintiff has a high school education and reported past work as a cleaner, cook, and receptionist. (Tr. 265–66). Her date last insured for Title II benefits is December 31, 2023. (Tr. 13).

1

Plaintiff's applications were denied initially on September 25, 2020 (Tr. 124), and upon reconsideration on May 26, 2021. (Tr. 129–34). Upon Plaintiff's request, a hearing was held before the ALJ on January 25, 2022. (Tr. 32–61). Following the hearing, the ALJ issued the above referenced unfavorable decision, dated May 3, 2022. (Tr. 8–21). Plaintiff's request for review was denied by the Appeals Council on October 7, 2022, making the ALJ's decision the final determination of the Commissioner. (Tr. 1–4).

Plaintiff initiated this action challenging that decision pursuant to 42 U.S.C. §§ 405(g), 1383(c). The Commissioner has answered Plaintiff's complaint, and this case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II.     FACTUAL BACKGROUND

Plaintiff alleges disability due to bipolar disorder, depression, anxiety, schizophrenia, diabetes, high blood pressure, a "heart problem," peripheral neuropathy, and acid reflux. (Tr. 264). Her medical records document uncontrolled diabetes, abdominal pain, fatigue, nausea and diarrhea/vomiting, chest pain, and severe hypertrophic obstructive cardiomyopathy, in addition to hospitalization for depression, anxiety, bipolar disorder, and suicidal ideation. (Tr. 332–36, 372–78, 386, 392, 395, 398, 515–16, 518, 520–21, 548, 598, 604, 645, 653, 668, 790, 792, 798).

On September 23, 2020, state agency medical consultant, Donna Stroud, MD, indicated that "[t]here is not enough information to fully evaluate any of [Plaintiff's] [physical] impairments. Overall this is IE [(insufficient evidence)]." (Tr. 66–67, 73–74). Nevertheless, Dr. Stroud concluded that Plaintiff could perform medium exertion work. (Tr. 66–67, 73–74). On March 24, 2021, a second state agency consultant, Stacie Weil, MD, concurred with that assessment. (Tr. 85, 88–89, 103, 106–07).

Similarly, on September 23, 2020, the initial state agency psychiatric consultant, Xanthia Harkness, PhD, opined, that "there is not enough information to fully evaluate this claim. Overall this is IE [insufficient evidence]." (Tr. 64–65, 72). Upon reconsideration, on May 25, 2021, however, a second state agency psychiatric consultant, Craig Horn, PhD, found Plaintiff's depressive/bipolar disorder to be severe. (Tr. 85). Dr. Horn assessed moderate limitations in each of the following areas: carrying out detailed tasks; maintaining attention/concentration for extended periods; working in coordination with or proximity to others; completing a normal workday/workweek and performing at a consistent pace; interacting appropriately with the general public; responding appropriately to change; and traveling to unfamiliar places or using public transportation. (Tr. 91–93, 109–11). As a result, Dr. Horn concluded that Plaintiff could perform work with simple, routine tasks, away from the public. (Tr. 92–93, 110–11).

On July 13, 2021, Kristi Ernandez, NP-C, issued an opinion regarding Plaintiff's physical limitations. (Tr. 784–85). She noted Plaintiff's mental impairments, diabetes mellitus type II, and obstructive cardiomyopathy. (Tr. 784). NP-C Ernandez reported Plaintiff's medication side effects include fatigue, GI upset, and drowsiness. (Id.). She indicated that Plaintiff would need to recline or lie down in excess of standard work breaks and that her symptoms would constantly interfere with her ability to maintain the attention and concentration necessary to perform work tasks. (Id.). At a maximum, Plaintiff could sit for two hours in an eight-hour workday, stand for one hour in an eight-hour workday, occasionally lift ten pounds, occasionally reach and handle objects, and would require unscheduled breaks for fifteen minutes per hour. (Id.). Additionally, Plaintiff would likely be absent more than four times per month. (Tr. 785).

On August 2, 2021, Christi Williamson, MD, opined that due to her poor focus, Plaintiff has a moderate limitation in the ability to sequence multi-step activity and a mild limitation in

3

following one or two-step instructions, recognizing and correcting a mistake or identifying and solving a problem, and using reason/judgment to make work decisions. (Tr. 786). Dr. Williamson assessed that Plaintiff's depression markedly limits her ability to work at an appropriate and consistent pace or complete tasks timely, sustain an ordinary routine or attendance at work, and work a full day without needing more than the allotted number/length of breaks. (Tr. 787). He noted that, additionally, Plaintiff's depression moderately limits her ability to ignore or avoid distractions and work close to or with others, and mildly limits her ability to initiate and perform a known task. (Id.). Dr. Williamson further indicated that Plaintiff has a marked limitation in the ability to respond appropriately to requests, suggestions, criticism, correction, or challenges, and has moderate limitations in each of the following areas: adapting to change, managing her psychological symptoms, setting realistic goals, independently planning, handling conflict with others, understanding and responding to social cues, and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. (Tr. 787–88).

In her decision, Administrative Law Judge Theresa R. Jenkins ("the ALJ") found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (Tr. 13). She found that Plaintiff has the following severe impairments: Type II diabetes mellitus, peripheral neuropathy, morbid obesity, hypertrophic obstructive cardiomyopathy, hypertension, edema, cellulitis of the right upper extremity, anxiety, depression, bipolar disorder, and schizophrenia; none of which were assessed to meet or equal that of a listed impairment in 20 C.F.R. 404, Subpart P, Appendix I. (Tr. 13–14). The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform light exertion work, subject to the following:

> occasional performance of all postural activities; avoid workplace hazards; frequent, but not continuous, use of the bilateral lower extremity for pushing,

pulling, and operating foot controls; frequent, but not continuous, use of the right upper extremity for pushing, pulling, operating hand controls, as well as reaching in all directions, including overhead; able to sustain attention and concentration for 2 hours at a time, and can perform unskilled work and carry out routine, repetitive tasks, but no work requiring a prod rate or demand pace; avoid work environments dealing with crisis situations, complex decision making, or constant changes in a routine setting; and frequent, but continuous [sic], interactions with supervisors, only occasional contact or interactions with coworkers, and no public contact or interactions.

(Tr. 15). This RFC was allegedly based on the ALJ's findings that: Plaintiff's allegations and testimony concerning the severity and limiting effects of her impairments are not fully supported by the objective record evidence; the state agency medical and psychological consultants' opinions are all "somewhat persuasive" because they are generally consistent with and supported by the medical evidence available as of the time the opinions were rendered; and the opinions of NP-C Ernandez and Dr. Williamson, were inconsistent with and unsupported by the medical evidence and thus not persuasive. (Tr. 18–19). The ALJ subsequently concluded that although Plaintiff did not have the RFC necessary to perform her past relevant work, she could adjust to other work existing in significant numbers in the national economy and was therefore not disabled. (Tr. 19–21).

### III. STANDARD OF REVIEW

#### a. Substantial Evidence Review

Section 405(g) of Title 42 of the U.S. Code permits judicial review of the Social Security Commissioner's denial of social security benefits. Review by a federal court is not <u>de novo</u>. <u>Smith v. Schwieker</u>, 795 F.2d 343, 345 (4th Cir. 1986). Rather, inquiry in disability cases is limited to whether the ALJ (1) supported her findings with substantial evidence and (2) applied the correct law. <u>Arakas v. Comm'r, Soc. Sec. Admin.</u>, 983 F.3d 83, 94 (4th Cir. 2020).

Substantial evidence "consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). In other words, substantial evidence is enough relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). However, "[i]n reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgement for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

An ALJ must also apply the correct law. A factual finding by the ALJ is only binding if the finding was reached by a proper standard or application of the law. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) (citing Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980);

Williams v. Ribbicoff, 323 F.2d 231, 232 (5th Cir. 1963); Tyler v. Weinberger, 409 F. Supp. 776, 785 (E.D. Va. 1976)).

### b. Sequential Evaluation

The Social Security Administration uses a five-step sequential review process to determine whether an individual is disabled. 20 C.F.R. 404.1520(a) and 416.920(a). An ALJ evaluates a disability claim as follows:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity (RFC), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth

7

step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. Residual Functional Capacity (RFC)

RFC is an "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling ("SSR") 96-8p. RFC "does not represent the least an individual can do despite his or her limitations or restrictions, but the most." Id. RFC is the most someone can do despite their mental and physical limitations. 20 C.F.R. § 404.1545(a)(1). To determine RFC, the adjudicator is instructed to base the assessment on "all of the relevant medical and other evidence." 20 C.F.R § 404.1545(a)(3). Thus, the ALJ's RFC assessment must always consider the medical source opinions of record, and when an ALJ's ultimate RFC assessment conflicts with the opinion of a medical source, the ALJ must explain the reason for rejecting of that opinion. SSR 96-8p.

Social Security Regulations dictate the manner in which an ALJ must evaluate and consider medical opinion evidence. For claims, such as this one, filed after March 27, 2017, 20 C.F.R. §§ 404.1520c, 416.920c applies and requires the ALJ to consider the following factors: (1) Supportability; (2) Consistency; (3) Relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) Specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c). As with the old regulation, "A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v).

8

However, supportability and consistency are now specified as the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). As such, the regulations contain "articulation requirements" which state that the ALJ "will explain" in his decision how the supportability and consistency factors were considered for each medical source opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1); see also Revisions to Rules, 82 Fed. Reg. at 5853 (defining supportability as "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation"). The regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is an external check that references evidence from other medical and nonmedical sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); see also Revisions to Rules, 82 Fed. Reg. at 5853 (defining consistency as "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim"). The regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

9

Finally, the ALJ must support each conclusion with evidence. SSR 96-8p requires the following:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule, and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

In other words, "the ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (quoting Mascio v. Colvin, 780 F.3d 632, 694 (4th Cir. 2015) (quoting Monroe, 826 F.3d at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)))). In formulating the RFC, the ALJ may not just pick and choose from the evidence but must consider it in its entirety. Kirby v. Astrue, 731 F. Supp. 2d 453, 456 (E.D.N.C. 2010).

## IV. FINDINGS AND CONCLUSIONS

Plaintiff contends that the ALJ erred by improperly evaluating the medical opinion evidence pursuant to 20 C.F.R. §§ 404.1520c, 416.920c and failing to explain how the opinion evaluation informed the RFC assessment. For the following reasons, the Court agrees.

The regulations governing the evaluation of medical opinion evidence changed in recent years. The new regulations, applicable here, require that the ALJ comply with a "reasonable articulation standard," the purpose of which is to permit "a reviewing court to trace the path of an adjudicator's reasoning,," thereby preventing any impediment to " a court's ability to review [the ALJ's] final decision." 82 Fed. Reg. 5844-01 at 5858; see also Paul B. v. Kijakazi, No. 6:20cv78, 2022 WL 989242, at *4 (W.D. Va. Mar. 31, 2022) (observing that "[t]he regulations require

ALJs to 'explain' the significance of relevant evidence to their evaluation of the persuasiveness of a medical opinion").

Here, the ALJ failed to provide the requisite explanation; thus, she failed to build a logical bridge from the evidence to her conclusion as to the persuasiveness of each medical opinion as well as the ultimate RFC assessment. For example, the ALJ claimed that opinions of the two state agency medical consultants were "somewhat persuasive" because they "are generally consistent with, and supported by, the claimant's progress reports and examination findings." (Tr. 18). The ALJ went on to cite to a selection of findings pulled from twenty pages of a record of nearly 700. (Id.). As an initial matter, while the ALJ used the word "supported," she never actually addressed the supportability factor at all. Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

Here, both state agency consultants explained that the record did not contain sufficient evidence upon which they could evaluate even the threshold matter of whether Plaintiff has any severe medical impairments. (Tr. 66–67, 73–74, 85, 88–89, 103, 106–07). Despite noting this, they found that Plaintiff is limited to medium exertion work. The ALJ did not discuss or explain her findings in light of the state agency consultants' opinions regarding the lack of sufficient evidence in the record. (Tr. 18). This was error. Cantrell v. Kijakazi, No. 2:21CV00021, 2022 WL 3335778, at *9 (W.D. Va. Aug. 12, 2022) ("to properly assess supportability, the ALJ must consider whether a medical source considered relevant objective medical evidence and presented supporting explanations").

The ALJ did concede that additional, significant medical records, establishing that Plaintiff is in fact limited by her severe impairments, were obtained at a later date and thus not

11

available to the state agency consultants. (Tr. 18). But, as courts have noted, where state agency assessments were performed on an incomplete record, they cannot be considered to be particularly persuasive. Gray v. Astrue, No. 7:09CV0282, 2010 WL 3943746, at *8 (W.D. Va. Oct. 7, 2010); see also Kirby v. Colvin, No. 4:13cv3138, 2015 WL 1038036, at *4 (D.S.C. Mar. 10, 2015) (remanding where ALJ credited state agency consultant opinions which had not considered subsequently obtained significant medical evidence); 20 C.F.R. § 404.1519a, 416.919a (explaining that a consultative examination may be necessary where the evidence is insufficient or there has been a change in condition, the current severity of which has not been determined). Indeed, the ALJ is forced to implicitly admit that the two opinions she just claimed were "consistent with" unspecified evidence, are, on the contrary, inconsistent with probative records which establish Plaintiff's severe medical impairments. (Tr. 18). Because the ALJ failed to explain how the evidence she referenced could logically lead to her conclusion in that regard, her legal error frustrates meaningful review. Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (ALJ's summary of evidence and stated conclusion lacked an explanation for how she reached her conclusion based on that evidence).

The ALJ's evaluation of the state agency psychological consultant opinions is also flawed. (Tr. 18). While the ALJ stated that the "consultants" both found Plaintiff limited to the same extent and subject to the same functional restrictions, the record belies this. (Id.). Like the two state agency medical consultants, the first psychiatric consultant, Dr. Harkness, opined that the record was insufficiently developed to fully evaluate Plaintiff's claim. (Tr. 64–65 ("there is not enough information to fully evaluate this claim. Overall this is IE [insufficient evidence]")). Unlike Dr. Harkness, the second psychiatric consultant, Dr. Horn, explicitly found that Plaintiff does suffer from severe mental impairments which have a clearly discernable, limiting impact on

12

her ability to perform work functions. (Tr. 85, 91–93, 110–11). He concluded that Plaintiff could perform work with simple, routine tasks, away from the public. (Tr. 92–93, 110–11). The ALJ purported to have found both Dr. Harkness's opinion and Dr. Horn's opinion both supported and somewhat persuasive, but the two opinions, and their underlying rationale, are irreconcilable with one another. (Tr. 18).

The ALJ's evaluation of the two remaining medical opinions was also flawed. First, she misstates the record, attributing both opinions to Kristi Ernandez, NP-C, when in fact the opinion as to Plaintiff's mental limitations was provided by Christi Williamson, MD. (Tr. 19, 786–88). In any event, the ALJ found both opinions "not persuasive," having concluded that both were "inconsistent with, and unsupported by" progress reports, treatment, and examination studies. (Tr. 19). However, she failed to explain how the findings she highlighted were inconsistent with or failed to support the limitations each source assessed. (Id.). This was also error.

Every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by "a narrative discussion describing [ ] the evidence" that supports it. Dowling v. Comm'r of Soc. Sec. Admin., 986 F.3d 377, 387 (4th Cir. 2021). In explaining her decision, however, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Pearce v. Saul, No. CV 0:20-1623-PJG, 2020 WL 7585915, at *3 (D.S.C. Dec. 22, 2020) (citing Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017); see also Arakas, 983 F.3d at 102. By selectively referencing only those findings which providers, at times, did not indicate were abnormal, and disproportionately discussing records from the intermittent, limited duration periods of improvement, the ALJ impermissibly cherry-picked from the record to support her desired conclusions. As result, her decision does not contain an

explanation for finding the two treating source opinions inconsistent with evidence from multiple other medical professionals which, by all appearances, supports their assessments of Plaintiff's limitations.

The ALJ's insufficiently explained and erroneous evaluation of the evidence in this case has culminated in an unsupported RFC assessment. As the Court of Appeals reiterated in Thomas, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019). The second component, the ALJ's logical explanation, is just as important as the other two. Id. ("Indeed, our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion"). Therefore, it is well established that the ALJ must both identify evidence that supports her conclusion and "build an accurate and logical bridge from [that] evidence to [her] conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)). The ALJ has not done so here by claiming to be persuaded by medical opinions which indicated that Plaintiff did not have any severe physical impairments, while finding that Plaintiff has severe diabetes, peripheral neuropathy, morbid obesity, hypertension, edema, cellulitis, and hypertrophic obstructive cardiomyopathy. (Tr. 13).

Similarly, as discussed above, there is also no way to reconcile the ALJ's finding that an assessment stating that Plaintiff does not have any severe mental impairments is equally persuasive as one which indicates that Plaintiff has severe mental impairments which limit her to the performance of simple, routine work "away from the public." Nor do either of those assessments logically lead to the ALJ's RFC, which makes no reference to "simple" work or the need to be physically "away from the public." (Tr. 15). Although the ALJ is not required to adopt

all limitations included in an opinion found 'persuasive,' the ALJ's RFC is unsupported by substantial evidence where "it appears that the ALJ may have misunderstood the provider's opinion." Loschke v. Kijakazi, No. 620-CV-03331 (RMG/KFM), 2021 WL 4354604, at *4 (D.S.C. Sept. 14, 2021), report and recommendation adopted, No. CV 6:20-3331-RMG, 2021 WL 4392009 (D.S.C. Sept. 24, 2021) (explaining that while the ALJ found the medical opinion persuasive, the RFC is inconsistent with that opinion and the ALJ failed to explain the inconsistency, raising the question of whether the ALJ misunderstood the opinion).

Where, as here, the reasoning behind the conclusions is not apparent, the legal propriety and evidentiary support for those conclusions evade meaningful review. Ray v. Comm'r of Soc. Sec., No. 1:21cv159-RJC, 2022 WL 3364311, at *4 (W.D.N.C. Aug. 15, 2022) (citing Woods v. Berryhill, 888 F.3d 686, 692–93 (4th Cir. 2018) ("[T]he ALJ must adequately explain his reasoning; otherwise, we cannot engage in meaningful review."); Patterson v. Comm'r of Soc. Sec., 846 F.3d 656, 663 (4th Cir. 2017) ("Show your work. The ALJ did not do so here, and this error rendered his decision unreviewable)). The Commissioner's decision is therefore vacated, and this matter is remanded for further administrative development.[1]

## V. CONCLUSION

In sum, this matter is remanded for further administrative proceedings consistent with this Order. Having thoroughly reviewed the ALJ's decision, the record, and the parties' motions and briefs, the Court enters the following Order.

**ORDER**

---

[1] This may include, for example, submitting the medical records, obtained at a later date (and thus not available to the state agency consultants in their original findings), to the state agency consultants for further consideration of Plaintiff's claim in light of these later submitted records.

**IT IS, THEREFORE, ORDERED** that for the reasons set forth above, Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **GRANTED**, Defendant's Motion for Summary Judgment (Doc. No. 11) is **DENIED**, and this matter is **REVERSED** and **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

Signed: June 27, 2023

Max O. Cogburn Jr.
United States District Judge